**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

**THUMBELINA HINSHAW, as
conservator for JASON COOPER,**

        **Plaintiff,**

        **vs.**

**UNITED STATES OF AMERICA,**

        **Defendant.**

)
)
)
)
)
)
)
)
)
)
)
)
)

**2:15-cv-01847 JWS**

**ORDER AND OPINION**

**[Re: Motions at Dockets 71 & 73]**

## I.  MOTIONS PRESENTED

Before the court are two summary judgment motions.  At docket 71 plaintiff
Thumbelina Hinshaw ("Hinshaw") moves for partial summary judgment on the issue of
non-party fault pursuant to Rule 56 of the Federal Rules of Civil Procedure.  She
supports the motion with a declaration of counsel at docket 71-2 and a separate
statement of facts at docket 72.  Defendant United States of America ("the United
States") opposes at docket 75.  The United States submits a controverting statement of
facts and statement of additional material facts at docket 76.  Hinshaw replies at
docket 80.

The United States moves for summary judgment at docket 73 and supports the
motion with a statement of facts at docket 74.  Hinshaw opposes at docket 77 and

submits a controverting statement of facts and statement of additional material facts at docket 78.  The United States replies at docket 81.

Oral argument was requested, but would not assist the court.

## II.  BACKGROUND

This is a medical negligence action that Hinshaw has brought against the United States for failing to provide adequate care to Jason Cooper ("Cooper").  At all relevant times Hinshaw, a California resident, was Cooper's caregiver.  Cooper, who has a history of schizophrenia and psychotic episodes, traveled from California to Phoenix, where the events giving rise to this action took place.

On the night of November 29, 2013, the Phoenix Police Department received a report of a person acting suspiciously.[1]  Responding to the call, Officer Rodney Lomibao ("Lomibao") encountered Cooper in a vacant lot.[2]  Cooper informed Lomibao that he is a veteran who suffers from schizophrenia.[3]  After conducting a records check, Lomibao discovered that Hinshaw had reported Cooper as a missing person.[4]  Lomibao then called Hinshaw, who told him that Cooper was in need of his medications and needed to go to the hospital.[5]  Lomibao agreed to take Cooper to the nearest VA Hospital (the Carl T. Hayden VA Medical Center).  Hinshaw told Lomibao that she would drive from California to Arizona to retrieve Cooper there.[6]

---

[1]Doc. 74-3 at 151.

[2]*Id.* at 85.

[3]Doc. 78-3 at 40.

[4]Doc. 78 at 2.

[5]Doc. 74-3 at 87–89; doc. 78 at 2; doc. 78-3 at 21.

[6]Hinshaw testified that she told Lomibao she would drive to Phoenix *if* the VA Hospital did not admit Cooper to the psychiatric ward.  Doc. 74-3 at 106.  Lomibao recalls the conversation differently, stating that Hinshaw told him she was on her way.  *Id.* at 87, 151; doc. 78 at 2.

Lomibao arrived at the VA Hospital's emergency department at approximately 8:50 pm, where he encountered Officer Patrick Howard ("Howard") of the VA Police Department. Lomibao testified at his deposition that every time he goes to the VA hospital he contacts the VA police officer there, who always asks "for the person's information and why they are there."[7] Lomibao testified that he told Howard that Cooper was reported as a missing person, was diagnosed as schizophrenic, was in need of his medications, and his caregiver, Hinshaw, was on her way to pick him up.[8] Lomibao also testified that he gave Hinshaw's name and number to Howard and told him that they should contact Hinshaw with any questions.[9]

At his deposition Howard denied that Lomibao informed him that Cooper was schizophrenic and in need of medication, stating that if Lomibao had done so he "would have handled this whole situation differently" and relayed that information to the medical staff in the emergency department.[10] But Howard concedes that Lomibao told him that Cooper was reported as a missing person and that Hinshaw was on her way to pick him up.[11] Yet, Howard did not pass on any information about Cooper to the emergency department medical staff.[12] Instead, he merely told the oncoming shift of VA police officers that Cooper was waiting for Hinshaw to pick him up.[13]

---

[7]Doc. 78-3 at 23.

[8]Doc. 74-3 at 92.

[9]Doc. 71-3 at 9.

[10]Doc. 78-3 at 50-53.

[11]*Id.* at 43.

[12]Doc. 78 at 4; doc. 78-3 at 57.

[13]Doc. 78 at 4. *See also* doc. 78-3 at 63.

According to Howard's report, Howard asked Cooper if he felt like harming himself or any other person and Cooper responded no, "he just felt like he was going around in circle [sic]."[14] Howard's report states he told Cooper that if Cooper "agreed to obey all the rules and regulation [sic] of the medical center and not cause any problems that he was free to stay [there] until RN Hinshaw arrived from San Diego."[15] The report states that Howard advised Cooper "that if he wished to speak with a social worker he could check in with the Emergency Room and they could provide him with any assistance he may need."[16]

Cooper proceeded to check in with the emergency room unaccompanied by Howard.[17] In total, Cooper was treated by two nurses, a physician, and a social worker. Each testified that they were not informed that Cooper was reported as a missing person, was schizophrenic, was in need of his medications, or that Hinshaw was on her way to pick him up.[18] The emergency department triage note states that Cooper asked to speak with a social worker and did not have a medical complaint.[19]

Cooper was seen by a physician, who treated him for shoulder pain.[20] The doctor's notes state that Cooper "[did] note offer much history and seem[ed] elusive."[21] He was then counseled by a social worker, who gave him information about local

---

[14]Doc. 78-3 at 62.

[15]*Id.*

[16]*Id.*

[17]Doc. 78 at 4.

[18]Doc. 78-3 at 88-92, 98, 113.

[19]Doc. 74-3 at 140.

[20]*Id.* at 137.

[21]*Id.*

community resources.[22]  The social worker's notes state that Cooper explained that he had come to the emergency room that night "because he wanted a drink and some food."[23]  They also state that Cooper "did present with some bizzare [sic] behavior (eye contact and his round about way of answering some questions)" but also that Cooper "was able to answer questions logically and demonstrated appreciation with assistance to resources."[24]  The social worker observed that Cooper's notes indicate he had "been documented as being violent and having a history of psychosis."[25]  But, she noted, Cooper self-reported that he had his medications and had been taking them.[26]  The social worker concluded that Cooper did not present with "any urgent needs aside from housing and resource assistance."[27]

The hospital records show that at 11:15 pm there were "no behavioral problems noted"[28] and Cooper was discharged from the emergency department and allowed to wait in the lobby until morning.[29]  Instead, at some point between 12:25 and 1:30 am, Cooper left the waiting room.[30]  At around 5:20 am he was found by the Phoenix Police Department lying in the middle of the road, having been struck by a hit-and-run driver.[31]

---

[22]*Id.* at 136.

[23]*Id.*

[24]*Id.* at 137.

[25]*Id.* at 136.

[26]*Id.*

[27]*Id.* at 137.

[28]*Id.* at 145.

[29]Doc. 78 at 6-7.

[30]*Id.* at 7.

[31]*Id.*

He was then transported to a different hospital with life-threatening injuries.[32]  The police crash report concludes that Cooper "was not in a crosswalk and failed to yield right-of-way for a vehicle traveling in an unknown direction of travel."[33]

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[34]  The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[35]  Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[36]  However, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[37]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[38]  Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[39]  Once the moving party has met this burden, the nonmoving party

---

[32]Doc. 78-3 at 131.

[33]Doc. 71-11 at 5.

[34]Fed. R. Civ. P. 56(a).

[35]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[36]*Id.*

[37]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[38]*Id.* at 323.

[39]*Id.* at 323–25.

-6-

must set forth evidence of specific facts showing the existence of a genuine issue for trial.[40]  All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[41]  However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[42]

## IV.  DISCUSSION

### A.    Adequacy of Hinshaw's Complaint

The United States' motion raises various arguments as to why it cannot be found liable for medical negligence as a matter of law.[43]  First, the United States asserts that Hinshaw lacks evidence showing that an individual health care provider committed malpractice.[44]  Hinshaw does not dispute this in response; she asserts instead that she is alleging negligence against the VA Hospital as an institution for Howard's negligence. In reply, the United States argues that Hinshaw's complaint does not adequately plead a medical negligence claim against the hospital.[45]  This argument lacks merit. Hinshaw's complaint puts the United States on notice that she was asserting a

---

[40]*Anderson*, 477 U.S. at 248–49.

[41]*Id.* at 255.

[42]*Id.* at 248–49.

[43]Doc. 73 at 3–16.

[44]*Id.* at 3–5.

[45]*See* the United States' reply, doc. 81 at 1.  *See also id.* at 3–4 ("Here, the claim involves a police officer with no medical training providing security and other law enforcement services at the VA, which is at best a 'health-related service.'") (citing *Jeter v. Mayo Clinic Arizona*, 121 P.3d 1256, 1274 (Ariz. Ct. App. 2005) ("Whether . . . conduct [sounds in medical malpractice] depends on a number of factors, including whether the wrong involved the exercise of professional judgment in the treatment of the patient by health care providers or merely a failure to keep the hospital premises and equipment properly maintained.").

respondeat superior claim based, in part, on the negligent acts and omissions of unspecified VA Hospital employees and agents.[46]

**B.    Hinshaw's Claim Is Not Barred by the FTCA's Misrepresentation Exception**

The United States next argues that Hinshaw's claim is barred by the misrepresentation exception to the Federal Tort Claims Act ("FTCA"). "Absent a waiver of sovereign immunity, the Federal Government is immune from suit."[47]  The FTCA provides a limited waiver of sovereign immunity regarding "claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."[48]  Various claims are expressly exempted from this waiver, including claims that arise out of misrepresentation.[49]  "Although state law governs the scope of the United States' substantive tort liability, we must look to federal statutory and common law to determine whether a claim is . . . excluded under the FTCA."[50]

The leading Supreme Court cases on this topic are *Neustadt*[51] and *Block*.[52]  In *Neustadt*, the plaintiff had "been furnished a statement reporting the results of an

---

[46]*See, e.g.,* doc. 1 at 2 ¶¶ 7–8 (alleging that the United States is liable for the negligent acts and omissions of the VA Hospital's "physicians, nurses, *employees, agents, and representatives* acting within the course and scope of their employment and agency under the doctrine of respondeat superior.") (emphasis added).  *See also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (Rule 8(a)(2) only requires the plaintiff to "simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.") (citation and internal quotation marks omitted).

[47]*Loeffler v. Frank*, 486 U.S. 549, 554 (1988).

[48]28 U.S.C. § 1346(b)(1).

[49]28 U.S.C. § 2680(h).

[50]*Schwarder v. United States*, 974 F.2d 1118, 1127 (9th Cir. 1992).

[51]*United States v. Neustadt*, 366 U.S. 696 (1961).

[52]*Block v. Neal*, 460 U.S. 289 (1983).

-8-

inaccurate [Federal Housing Administration] inspection and appraisal, and . . ., in reliance thereon, [was] induced by the seller to pay a purchase price in excess of the property's fair market value."[53]  The Fourth Circuit held that his claim arose out of the government's negligence in performing the inspection, not its misrepresentation of the value of the property.  The Supreme Court reversed, holding that courts must "ascertain the real cause of the complaint"—the reason the plaintiff's "loss came about."[54]  And the reason for the plaintiff's loss, the Court held, was the government's breach of its duty to "use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs"—in other words, it had committed the tort of "negligent misrepresentation."[55]  In a relevant footnote, the Court observed that although some negligence claims "may be said to involve an element of 'misrepresentation,'" the tort of misrepresentation "'has been identified with the common law action of deceit,' and has been confined 'very largely to the invasion of interests of a financial or commercial character, in the course of business dealings.'"[56]

In *Block*, the Court encountered somewhat similar facts but reached a different conclusion.  The *Block* plaintiff alleged that the Farmers Home Administration ("FmHA") supervised the construction of her home and issued a report stating that "the construction accorded with the drawings and specifications approved by FmHA."[57]  After she moved in, the plaintiff discovered many serious defects in the construction of the house.  The Supreme Court held that her negligence claim was not barred by the misrepresentation exception, distinguishing the duty to use due care in communicating

---

[53]*Neustadt*, 366 U.S. at 697–98.

[54]*Id.* at 703 (quoting *Hall v. United States*, 274 F.2d 69, 71 (10th Cir. 1959)).

[55]*Id.* at 706.

[56]*Id.* at 711 n.26 (quoting William L. Prosser, *Prosser on Torts* § 85, at 702–03 (1st ed. 1941)).

[57]*Block*, 460 U.S. at 292.

information, which is barred by § 2680(h), from the duty to perform some other task that is not barred by § 2680(h).  The duty at issue in the plaintiff's negligence claim, the Court held, was of the latter variety: the "duty to use due care to ensure that the builder adhere[s] to previously approved plans and cure[s] all defects before completing construction."[58]  The plaintiff's alleged injuries were caused by FmHA's breach of this duty because, but for that breach, the builder would not have turned the house over to her in its defective condition.[59]  This was different than the situation presented in *Neustadt*, where the plaintiff "alleged no injury that he would have suffered independently of his reliance on the erroneous appraisal."[60]

The Ninth Circuit has observed that "[c]ourts have had difficulty determining whether a claim is one for misrepresentation.  The concept is slippery; 'any misrepresentation involves some underlying negligence' and 'any negligence action can be characterized as one for misrepresentation because any time a person does something he explicitly or implicitly represents that he will do the thing non-negligently.'"[61]  That being said, there are several guideposts that aid courts in making this determination.  Two are relevant here.  First, in line with *Block*, the Ninth Circuit has held that § 2680(h) does not apply if the plaintiff alleges injuries caused not by the communication of information but rather by the negligent performance of an "operational task"—like rendering medical treatment,[62] designing a dam and reservoir,[63]

---

[58]*Id.* at 297.

[59]*Id.* at 297–98.

[60]*Id.* at 296.

[61]*United States v. Fowler*, 913 F.2d 1382, 1387 (9th Cir. 1990) (quoting *Guild v. United States*, 685 F.2d 324, 325 (9th Cir.1982)).

[62]*Ramirez v. United States*, 567 F.2d 854, 856 (9th Cir. 1977) (en banc).

[63]*Guild*, 685 F.2d at 326.

-10-

processing a security clearance,[64] or flying a fighter jet.[65]  Second, the Ninth Circuit has held that § 2680(h) applies "where the plaintiff suffers economic loss as a result of *a commercial decision* which was based on a misrepresentation by government."[66]

Both of these guideposts point away from finding that § 2680(h) applies here. Hinshaw alleges that Cooper's injuries were caused by Howard's negligent performance of an operational task: the "health-related service" of obtaining and transmitting certain information about an incoming patient.  *Ramirez* is instructive.  There, the Ninth Circuit held that a negligence claim based on "a government physician's failure to warn of risks attendant to surgery" does not arise out of misrepresentation because, even though it involved reliance on a communication, the patient's injuries were caused by "negligent conduct, not of an esoteric form of misrepresentation."[67]  Similarly, the duty at issue in Hinshaw's medical malpractice claim is not the generic duty to use due care in

---

[64]*Mundy v. United States*, 983 F.2d 950, 952 (9th Cir. 1993).

[65]*United Air Lines, Inc. v. Wiener*, 335 F.2d 379, 392 (9th Cir. 1964).

[66]*Green v. United States*, 629 F.2d 581, 584–85 (9th Cir. 1980) (emphasis added) (citing with approval *Preston v. United States*, 596 F.2d 232, 239 (7th Cir. 1979) ("The test is not whether the injury was economic, but rather whether it resulted from a commercial decision based on a governmental misrepresentation.")).  *See also Block*, 460 U.S. at 297 ("Section 2680(h) . . . relieves the Government of tort liability for pecuniary injuries which are wholly attributable to reliance on the Government's negligent misstatements."); *Mt. Homes, Inc. v. United States*, 912 F.2d 352, 356 (9th Cir. 1990) ("Section 2680(h) precludes liability when the plaintiff suffers an economic loss as a result of a commercial decision based on a misrepresentation consisting of either false information or a failure to provide information it had a duty to provide."); *Guild*, 685 F.2d at 325 ("The misrepresentation exception applies to claims for damages resulting from commercial decisions based upon false or inadequate information provided by the government."); *Ramirez*, 567 F.2d at 856 ("The misrepresentation exclusion presumably protects the United States from liability in those many situations where a private individual relies to his economic detriment on the advice of a government official."); *Murrey v. United States*, 73 F.3d 1448, 1450–51 (7th Cir. 1996) ("The exclusion of claims of misrepresentation is designed to protect the government from being sued for fraud and other torts that come under the general legal heading of misrepresentation, whether intentional or negligent, injuring merely the pocketbook.  It does not exclude claims of physical injury that happen to involve, as many do, an element of communication or misleading silence.") (citations omitted).

[67]567 F.2d at 855, 857.

-11-

communicating information, but rather the separate duty to use due care when providing health-related services.[68]

What is more, Cooper's injuries do not flow from any commercial decision.[69] The United States argues that Ninth Circuit held in *Lawrence v. United States*[70] that the misrepresentation exception "is not limited to misrepresentations involving commercial decisions."[71] It is true that *Lawrence* held that the plaintiff's negligence claim, which was not based on a commercial decision, was barred by § 2680(h). But the court did not mention any of the cases that seem to limit the misrepresentation exception's application to injures resulting from commercial decisions.[72] Looking at the case law as a whole, this court concludes that if a failure to communicate results in personal injury, it "is classified as a tort of negligence, not a tort of misrepresentation."[73]

---

[68]A.R.S. § 12-561 (defining "medical malpractice action" as "an action for injury or death against a licensed health care provider based upon such provider's alleged negligence, misconduct, errors or omissions, or breach of contract in the rendering of health care, medical services, nursing services or other health-related services.").

[69]*Green*, 629 F.2d at 584 ("In applying the misrepresentation exception, . . . the question is not whether the government is guilty of an affirmative misstatement or merely of an omission. Nor is the existence of a specific duty to warn the decisive factor. We think, rather, that the applicability of the exception depends upon the commercial setting within which the economic loss arose."); *Guild*, 685 F.2d at 325; *Ramirez*, 567 F.2d at 856.

[70]340 F.3d 952, 958 (9th Cir. 2003).

[71]Doc. 81 at 2.

[72]*Lawrence*, 340 F.3d at 958. One of those cases is the en banc court's decision in *Ramirez*, 567 F.2d at 856 (holding that *Neustadt's* footnote 26, which stated that the tort of misrepresentation was traditionally confined to injuries suffered in the course of business dealings, was "by itself sufficient to cause" the court to hold that the plaintiff's medical malpractice claim was not barred). *See Preston*, 596 F.2d at 239 (noting that *Ramirez's* holding was based in part on the fact that "the decision to undergo surgery was not a commercial one.").

[73]*Murrey*, 73 F.3d at 1451.

1    **C.    Hinshaw Has Submitted Sufficient Evidence of Proximate Causation**

2          Hinshaw's evidence shows Howard knew that: (1) Cooper was found "wandering

3    the streets,"[74] (2) Hinshaw, a registered nurse with the San Diego VA Health Care

4    System, had reported Cooper as a missing person;[75] (3) Cooper was diagnosed as a

5    schizophrenic;[76] (4) Cooper was in need of his medications;[77] (5) Lomibao took Cooper

6    to the Phoenix VA Hospital at Hinshaw's direction;[78] (6) Hinshaw was on her way to

7    Arizona to pick Cooper up;[79] (7) it would take Hinshaw about six hours to get there;[80]

8    and (8) the VA medical staff could call Hinshaw with any questions at the phone

9    number that Lomibao gave him.[81]  The United States concedes that Hinshaw's

10   evidence raises issues of material fact regarding the existence of Howard's duty to relay

11   this information to the medical staff.[82]  Hinshaw alleges that Howard breached this duty

12   by not conveying to the VA medical staff this basic information about why Cooper was

13   at the emergency department and the steps that were in motion to ensure his safety.[83]

14   The United States argues that even if Hinshaw could establish this breach, she cannot

15   establish causation.

16

17   _____

18        [74]Doc. 78-3 at 61.

19        [75]Doc. 71-5 at 6; 78-3 at 62.

20        [76]Doc. 71-3 at 9.

21        [77]*Id.*

22
23        [78]Doc. 71-5 at 6.

24        [79]Doc. 71-3 at 9.

25        [80]Doc. 78-3 at 62.

26        [81]Doc. 71-3 at 9.

27        [82]Doc. 81 at 4 n.2.

28        [83]Doc. 77 at 6–7.

The parties do not dispute that, because Hinshaw's claim relates to services provided in an emergency department, A.R.S. § 12-572(B) applies and Hinshaw must therefore establish the necessary elements of proof set out at A.R.S. § 12-563 by clear and convincing evidence. One such element is that the breach of the duty of care "was a proximate cause of the injury."[84] To establish proximate cause, a plaintiff must show both that the injury would not have occurred "but for" the defendant's negligent conduct (cause-in-fact) and that the resulting injury was foreseeable (legal causation).[85] The United States argues that Hinshaw's evidence fails to raise questions of material fact with regard to both components of proximate causation. "Causation is generally a question of fact for the jury unless reasonable persons could not conclude that a plaintiff had proved this element."[86]

### 1. There is a genuine dispute as to whether Howard's breach was a but-for cause of Cooper's injury

The United States first argues that Hinshaw's evidence fails to establish but-for causation as a matter of law. To create a jury question on this issue, Hinshaw must show that a reasonable person could conclude that her evidence clearly and convincingly shows that Cooper's injury would not have occurred but for Howard's conduct.[87]

Hinshaw's evidence is sufficient. The triage nurse testified that had she known that Cooper was reported as a missing person she would have "taken [Cooper] back to a room immediately" so that the emergency department staff could try to figure out whether he was dangerous and why someone reported him as a missing person.[88] She

---

[84]A.R.S. § 12-563(2).

[85]*Tellez v. Saban*, 933 P.2d 1233, 1240 (Ariz. Ct. App. 1996).

[86]*Barrett v. Harris*, 86 P.3d 954, 958 (Ariz. Ct. App. 2004).

[87]*See Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d 1040, 1047 (Ariz. 1990).

[88]Doc. 78-3 at 116.

-14-

also testified that if she had known that Cooper was schizophrenic and off his medications, she would have changed how she classified him with regard to whether he was a danger to himself or others.[89] The social worker testified that had she known the information that Howard did not relay she would have tried to convince Cooper to stay at the hospital until Hinshaw arrived.[90] This testimony is supported by Hinshaw's expert, who testified that the staff would have provided Cooper with "ongoing reinforcement that the best course of action for him would have been to sit in the Emergency Department bed, eat and drink until he got a ride home."[91] This evidence would support a reasonable jury finding that Cooper clearly would have remained safe at the hospital but for Howard's breach.

### 2. There is a genuine dispute as to whether Cooper's injury was a foreseeable consequence of Howard's breach

The United States next argues that there is no genuine dispute as to legal causation because no reasonable person could conclude that Hinshaw's evidence clearly and convincingly shows that Cooper's injury was "within the scope of the risk"[92] created by Howard's alleged negligence. A plaintiff proves legal causation "by demonstrating a natural and continuous sequence of events stemming from the defendant's act or omission, unbroken by any efficient intervening cause, that produces an injury, in whole or in part, and without which the injury would not have occurred."[93] "An 'efficient intervening cause' is an independent cause that occurs between the original act or omission and the final harm and is necessary in bringing about that

---

[89]Doc. 74-3 at 61.

[90]Doc. 78-3 at 104.

[91]Doc. 74-3 at 129; doc. 78-3 at 77.

[92]*Robertson*, 789 P.2d at 1048.

[93]*Barrett*, 86 P.3d at 958.

harm."[94]  It negates the defendant's liability if it "'was unforeseeable and may be described, with the benefit of hindsight, as extraordinary.'"[95] Thus, the court must analyze Hinshaw's evidence in the light most favorable to her and decide whether a jury could reasonably find that it clearly and convincingly shows that Howard could have foreseen that failing to relay Cooper's information to the emergency department staff could set into motion a natural and continuous sequence of events that caused Cooper's injury.

Critical to this inquiry are facts showing Howard's knowledge of the risk of harm at the time of the alleged breach.  For example, in *Robertson* the plaintiff brought a negligent failure-to-warn action against the motel where her police officer husband was shot and killed.[96]  The motel manager had been notified before the shooting that the eventual shooter had entered a guest's room and robbed two men at gunpoint.  The manager "testified at trial that after viewing the room where the robbery occurred, he ran outside to the west and north sides of the motel looking for" the police officer, but when he could not find him "he returned to his apartment and watched television for a moment until he heard" the fatal shot.[97]  The Arizona Supreme Court held that this evidence raised a legal causation question for the jury because the manager "knew an armed robbery had taken place, indicating other violence might occur."[98]  The court contrasted the situation with the situation presented in *Herbert*, where the Arizona Court of Appeals held that a tavern owner was not liable for selling alcohol to a patron who

---

[94]*Id.*

[95]*Id.* (quoting *Robertson*, 789 P.2d at 1047).

[96]*Robertson*, 789 P.2d at 1042.

[97]*Id.* at 1043.

[98]*Id.* at 1048.

shot and killed another patron because there was no evidence showing that the owner knew that the patron had a propensity for violence.[99]

In the case at bar, the United States argues that Hinshaw lacks sufficient evidence indicating that Howard could have known that his alleged breach would result in Cooper (1) leaving the VA Hospital before Hinshaw arrived (given that he had a safe place to wait in the hospital lobby) and (2) negligently entering the street.[100] The court disagrees. Howard testified that he knew Cooper was found "wandering the streets" in "a disheveled state" without any shoes on[101] and "looked like he had been on the streets for several days."[102] Cooper told Howard he "felt like he was going around in a circle," leading Howard to conclude that Cooper was "a little confused," "not fully aware of [his] surroundings," and "disoriented."[103] The jury could reasonably find that Howard knew that the registered nurse who reported Cooper missing was very concerned about Cooper's behavioral health because she asked the police to take him to a hospital.[104] And that Cooper was schizophrenic and off his medications.

This evidence, taken together, could reasonably be found to show that Howard clearly knew that Cooper was predisposed to making erratic, poor decisions.[105] From

---

[99]*Hebert v. Club 37 Bar*, 701 P.2d 847, 849 (Ariz. Ct. App. 1984) ("[T]he evidence clearly shows that appellee had no reason to believe that Hicks was dangerous or violent.").

[100]Doc. 73 at 15; doc. 81 at 6.

[101]Doc. 78-3 at 44, 62.

[102]*Id.* at 40.

[103]*Id.* at 48.

[104]*See* doc. 74-3 at 89.

[105]The court rejects the United States' argument, which relies heavily on *State v. Hoskins*, 14 P.3d 997, 1022 (Ariz. Ct. App. 2000), that expert testimony is needed to establish Howard's ability to recognize this predisposition. *Hoskins* is inapposite; it dealt with the question whether a defendant's difficult childhood was a "but for" cause of his later criminal behavior—a question that required expert testimony to answer. *Id.* Whether Cooper exhibited signs that he was inclined to make erratic, poor decisions is a question that the jury can resolve

-17-

this predisposition, the jury could reasonably infer that it was foreseeable to Howard that the emergency room staff would need to help Cooper make the safest available decision: staying at the hospital until his ride arrived. Thus, the jury could reasonably find that, by failing to inform the medical staff of all of Cooper's risk factors and the existence of this safe option, it was foreseeable to Howard that Cooper, left to his own devices, would make erratic, poor decisions like leaving the hospital lobby before his ride came and entering the street negligently. In sum, these intervening acts were not so unforeseeable that the court can declare as a matter of law that any fault on Howard's part was not the proximate cause of Cooper's injuries.

**D.     Hinshaw Has Submitted Sufficient Evidence of Unreasonable Risk**

Under Arizona law, a defendant may be found liable of negligence only if he or she subjected another to an unreasonable risk.[106] Whether a risk was unreasonable is "an evaluative judgment ordinarily left to the jury."[107] Yet, courts "set outer limits" on the jury's discretion, meaning that "[a] jury will not be permitted to require a party to take a precaution that is clearly unreasonable."[108] For example, no defendant is required to protect against "general risks" of harm faced by members of society at large.[109] But, where the defendant had reason to know of an elevated risk of harm, as where he or

by resort to common knowledge. *See Adams v. Amore*, 895 P.2d 1016, 1018 (Ariz. Ct. App. 1994).

[106]*See Ontiveros v. Borak*, 667 P.2d 200, 204 (Ariz. 1983).

[107]*Standley v. Retrum*, 825 P.2d 20, 23 (Ariz. Ct. App. 1991).

[108]*Id.*

[109]*See Tollenaar v. Chino Valley Sch. Dist.*, 945 P.2d 1310, 1311 (Ariz. Ct. App. 1997); *Standley*, 825 P.2d at 24.

-18-

she gives car keys to an unlicensed[110] or drunk driver,[111] a jury may properly judge the risk unreasonable.

The United States argues that Hinshaw lacks evidence showing that the risk that Cooper would be struck by a vehicle was any greater than the general risk that all pedestrians face.[112] This argument is unpersuasive for the reasons identified in the legal causation discussion above. The jury could reasonably find that the evidence clearly and convincingly shows that Cooper's characteristics made it especially likely that he would be harmed if he were to resume wandering the streets in the middle of the night.

**E.    The United States Has Submitted Sufficient Evidence of Non-Party Fault**.

At docket 29 the United States designated the driver as a nonparty at fault pursuant to A.R.S. § 12-2506(B).[113] "Because an allegation of comparative fault relating to nonparties is an affirmative defense, the defendant must prove the nonparty is actually at fault. As such, the defendant must offer evidence that the nonparty owed a duty to the plaintiff, that the duty was breached, and that the breach caused injury to the plaintiff."[114] Hinshaw moves for partial summary judgment on this issue, arguing

---

[110]*Tellez v. Saban*, 933 P.2d 1233, 1239 (Ariz. Ct. App. 1996) ("We conclude that reasonable minds could differ on whether Sabans' act of renting to an unlicensed driver without investigating the reason for the absence of a license created an unreasonable risk of harm to the public.").

[111]*Cf. Ontiveros v. Borak*, 667 P.2d 200, 208–09 (Ariz. 1983) (to protect against unreasonable risks, a defendant "may be required to guard an insane patient to prevent him from jumping from the hospital window, or to refrain from putting an intoxicated person off of a train into a railroad yard, or letting him have an automobile, or more liquor.") (citations omitted).

[112]Doc. 73 at 11–12.

[113]Doc. 29 ("Mr. Cooper's claimed injuries were proximately caused by the actions of the driver of this vehicle from both the impact of the accident and the failure to remain at the scene and seek prompt medical attention for Mr. Cooper.").

[114]*Ryan v. San Francisco Peaks Trucking Co.*, 262 P.3d 863, 869 (Ariz. Ct. App. 2011) (citing *A Tumbling–T Ranches v. Flood Control Dist. of Maricopa Cnty.*, 217 P.3d 1220, 1245 (Ariz. Ct. App. 2009)).

that the United States lacks any evidence showing that the driver was negligent. The United States responds by pointing to two pieces of evidence that, it argues, defeat Hinshaw's motion.

First, the United States points to the fact that the driver fled the scene of the collision without aiding Cooper or calling 911. This evidence pertains not to the duty of care the driver owed Cooper when he was driving, but rather his duty that arose after the collision to render Cooper reasonable assistance. As Hinshaw points out in reply, however, the United States fails to identify any evidence showing causation. The United States asserts that it was not obligated to come forth with such evidence because Hinshaw "limited her challenge to the issue of whether the hit-and-run driver negligently struck Mr. Cooper."[115] This is incorrect. Hinshaw's motion asserts broadly that "there is no evidence that the driver was negligent"[116] and her motion seeks an order ruling "as a matter of law that the driver is not a non-party at fault in this case."[117] This triggered the United States' burden to set forth evidence of specific facts showing that the driver was negligent under any theory. By not setting forth any evidence of causation or damages, the United States failed to meet its burden with regard to its failure-to-render-post-collision-assistance theory of negligence.

Second, the United States asserts that the following facts show that the driver was negligent in striking Cooper: (1) Cooper was "either walking or standing in the road at the point of impact, i.e., he was not darting out into the road;" (2) the road is "wide open with no physical restrictions on view;" (3) "although the incident happened at night, the street lights would have illuminated the spot of the accident;" (4) "there were no weather restrictions on the driver's ability to see;" (5) the road's "posted speed limit is

---

[115]Doc. 75 at 5.

[116]Doc. 71-1 at 2.

[117]Doc. 71-1 at 8.

-20-

35 mph;" (6) the road was dry; and (7) the driver fled the scene of the accident.[118] In reply, Hinshaw argues that this evidence is insufficient to show the driver's breach. The court disagrees. The United States' circumstantial evidence is sufficient to support a reasonable jury finding that the driver should have seen Cooper in the road and avoided striking him. The question of the driver's negligence in striking Cooper will be submitted to the jury.

## V. CONCLUSION

Based on the preceding discussion, Plaintiff's motion at docket 71 is GRANTED IN PART and DENIED IN PART as follows: no fault will be apportioned to the driver for failing to render assistance to Cooper after the collision, but whether the driver was at fault for negligently striking Cooper will be decided by the jury. Defendant's motion at docket 73 is DENIED.

DATED this 28th day of August 2017.


/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

[118]Doc. 75 at 10.

-21-